**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDRES CORONADO (R33300), | ) | |
| | ) | |
| Petitioner, | ) | No. 15 C 2393 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| JEFF KORTE, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Andres Coronado brings this habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his armed habitual criminal and armed robbery convictions in Illinois state court. For the following reasons, the Court denies Coronado's petition and declines to issue a certificate of appealability.

**Background**

**A.   State Court Conviction**

The following facts are taken from the Illinois appellate court's opinion on direct appeal from Coronado's conviction.[1] At about 10 a.m. on November 6, 2009, two men entered Amigo's Gifts in Bensenville, Illinois to rob it. *People v. Coronado*, 2012 IL App (2d) 110574-U, ¶ 2. A man in a grey hooded sweatshirt pointed a gun at Hyo Lim, the proprietor of Amigo's, and "grabbed the cash register on the

---

[1]   The facts underlying Coronado's conviction as determined by the state courts are presumed correct. 28 U.S.C. § 2254(e)(1). Coronado has the burden of rebutting the presumption of correctness through clear and convincing evidence. *Id.*; *see also BenYisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008) ("presumption of correctness . . . applies to factual findings made by a state court of review based on trial record").

1

counter." *Id*. Lim struggled briefly with the man until the second man jumped over the counter and pushed Lim to the ground. *Id*. Both men left the store after emptying the register. *Id*. Lim was unable to identify the robbers. *Id*. Coronado became a suspect based on an anonymous phone call to the police. *Id*. ¶ 5.

Insurance papers for a van owned by Vincente Nunez were recovered at the crime scene. *Id*. ¶ 3. Nunez testified at trial that he loaned his yellow van to two men he knew as Andres and Rudy in November 2009. *Id*. The van's insurance papers were missing when Nunez got the van back. *Id*. Jennifer Cones, a forensic scientist, testified at trial that she had processed fingerprints recovered from the counter at Amigo's Gifts and from the van insurance papers. *Id*. ¶ 6. She testified that she matched those fingerprints to Coronado's. *Id*. The jury convicted Coronado of armed robbery and being an armed habitual criminal under 720 ILCS 5/24-1.7(a)(1), and the Court sentenced him to 28 years in prison. 2012 IL App (2d) 110574-U, ¶¶ 1; 7.

### B. Direct Appeal

Coronado appealed his conviction, arguing that the trial court erred by permitting Cones to testify that the fingerprints were Coronado's without proper foundation. *Id*. ¶ 8. The State responded that Coronado forfeited the issue by failing to timely object. *Id*. The appellate court agreed with the State and affirmed the conviction. *Id*. ¶¶ 9-19.

The appellate court found that Coronado "forfeited the issue" of "the lack of foundation for Cones's opinion" by failing to contemporaneously object or to

2

specifically object on this basis in pre-trial or post-trial filings. *Id.* ¶¶ 13-16. The appellate court explained that the operation of a forfeiture rule "'is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level.'" *Id.* ¶ 14 (quoting *People v. McNeal*, 955 N.E.2d 32, 53 (1st Dist. 2010)).

The appellate court further concluded that "[e]ven disregarding the forfeiture, the trial court properly admitted the [fingerprint] evidence." *Id.* ¶ 17. The court explained that "[o]nly where a foundation is completely lacking does the issue become one of admissibility." *Id.* The court noted that Cones "never testified to the number of points of comparison that she found, the State did not introduce the scanned images of the latent prints, Cones did not state which of defendant's prints correspond with the latent lifts, and the Automated Fingerprint Identification System record prints were not before the jury." *Id.* ¶ 10. But Cones "testified in detail about processing the fingerprints" in "nearly 30 pages" of direct testimony, and "defense counsel extensively cross-examined Cones about fingerprint analysis in general and about her work on this case" in "approximately 25 pages" of cross-examination. *Id.* ¶¶ 13, 17. The court concluded that "[t]here was more than sufficient foundation here that the trial court was not required to strike, *sua sponte*, Cones's testimony." *Id.* ¶ 17.

3

Coronado renewed his expert foundation argument, along with ineffectiveness of trial and appellate counsel arguments, in a *pro se* petition for leave to appeal ("PLA") to the Illinois Supreme Court. R. 11-4. The Illinois Supreme Court denied Coronado's PLA on November 27, 2013. *People v. Coronado*, 2 N.E.3d 1047 (Ill. 2013).

### C. State Post-Conviction Proceedings

On October 22, 2014, Coronado filed a *pro se* post-conviction petition in state court arguing, among other things, insufficiency of the evidence, defects in the fingerprint evidence, ineffective assistance of trial counsel for failure to object to the admission of the fingerprint evidence, and ineffective assistance of appellate counsel for failing to argue trial counsel's ineffectiveness. R. 1 at 39-46. The state court denied Coronado's post-conviction petition on November 4, 2014. *Id.* at 3. Coronado did not appeal because, in his view, the "[s]ame issues already have been presented and denied by [the] Illinois Supreme Court [ ] by way of denial of [the] PLA." *Id.*

### D. Federal Post-Conviction Proceedings

Coronado filed his *pro se* petition for a writ of habeas corpus in this Court on March 18, 2015, arguing that: (1) he is actually innocent; (2) he was denied his "14th Amendment Right" because the state court did not resolve his claim regarding the foundation for Cones's expert fingerprint testimony; and (3) his conviction violates the Eighth Amendment because he was "convicted and incarcerated without substantial proof." R. 1 at 5-6. Korte filed an answer to Coronado's petition arguing that Coronado's claims are procedurally defaulted and non-cognizable. R.

4

10. Coronado filed a reply in support of his petition. R. 16. He also filed a motion for appointment of counsel (R. 18), which this Court granted (R. 23).

Coronado's counsel sought and obtained leave to take discovery on two issues not addressed in Coronado's habeas petition: (1) "whether trial counsel acted reasonably with respect to the fingerprint evidence and [Coronado's] claimed alibi"; and (2) "whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal." R. 32 at 3, 6.

After conducting discovery, Coronado's counsel filed a supplemental memorandum in support of his petition. R. 42. That memorandum maintains that actual innocence is a cognizable legal claim, habeas proceedings are not procedurally barred where actual innocence implicates a fundamental miscarriage of justice, and medical records provide exonerating evidence in Coronado's case. *Id.* The supplemental memorandum does not amend Coronado's original habeas claims in any way; in particular, it does not raise an ineffective assistance claim against either trial or appellate counsel based on the fingerprint argument or investigation of Coronado's claimed alibi. *See id.* Korte filed a response to the supplemental memorandum maintaining that Coronado's claims are procedurally defaulted and non-cognizable, and that under any standard, Coronado's evidence fails to establish actual innocence. R. 43.

# Analysis

## I. Cognizability and Procedural Default

Korte argues that all of Coronado's claims are non-cognizable and procedurally defaulted. The Court addresses each in turn.

**Actual innocence claim.** The parties dispute whether Coronado's first claim of actual innocence is cognizable as a freestanding claim. "The Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence." *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)). Instead, "[t]o win federal relief, a petitioner must show an independent constitutional violation." *Id.*

It is true, as Coronado points out in his supplemental memorandum, that the Supreme Court in *Herrera* "assume[d], for the sake of argument . . . that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. But this is not a capital case. The Supreme Court has neither found nor implied that an actual innocence claim is cognizable absent a separate constitutional violation in a non-capital case. *See Gladney*, 799 F.3d at 895. Although the Seventh Circuit has recently characterized this question as "open to debate," it also made clear that such claims have not yet "been held to state a ground for federal habeas relief." *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017). Based on the current state of the

law, Coronado's freestanding actual innocence claim is almost certainly non-cognizable.

In any event, even if Coronado's freestanding actual innocence claim were cognizable, it is procedurally defaulted because it was not raised in a full round of state court review. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted the claim."); *see also People v. Washington*, 665 N.E.2d 1330, 1337 (Ill. 1996) (free-standing actual innocence claim may be raised on direct review).[2]

**Fingerprint evidence claim.** Turning to Coronado's fingerprint evidence claim, the Court agrees with Korte that Coronado's single reference to his "14th Amendment Right" in describing his claim (R. 1 at 5) is likely insufficient to state a cognizable constitutional claim. The foundation of Coronado's second claim is the state court's evidentiary ruling regarding the foundation for Cones's fingerprint analysis. And state court evidentiary rulings are "usually beyond the scope of federal habeas review." *See Perruquet v. Briley*, 390 F.3d 505, 511-12 (7th Cir. 2004) (petitioner's Fourteenth Amendment claim was cognizable because he did more than "merely cite his [Fourteenth Amendment] right" and instead used "enough detail to describe a claim that is within the power of a federal court to address"—namely, deprivation of an affirmative self-defense theory).

---

[2]   Actual innocence also can be raised as a gateway to excusing procedural default. The Court discusses Coronado's gateway actual innocence argument below.

7

Even if Coronado's fingerprint evidence claim is cognizable, it is procedurally defaulted. "A claim will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment clearly and expressly states that its judgment rests on a state procedural bar." *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014). "Forfeiture is an independent and adequate state law ground of decision that constitutes a procedural default and bars federal habeas review." *Bannister v. Butler*, 2017 WL 2424219, at *5 (N.D. Ill. June 5, 2017) (citing *Smith v. McKee,* 598 F.3d 374, 386 (7th Cir. 2010)); *see also, e.g.*, *Mitchell v. Williams*, 2015 WL 5722447, at *6 (N.D. Ill. Sept. 29, 2015) ("Claim Two is procedurally defaulted because the Illinois appellate court on direct review resolved the claim on an independent and adequate state law ground: forfeiture."). Here, the Illinois appellate court clearly and expressly relied on the independent and adequate state law ground of forfeiture to reject Coronado's fingerprint evidence claim. *See Coronado*, 2012 IL App (2d) 110574-U, at ¶¶ 13-16.

**Eighth Amendment claim.** Finally, Coronado maintains that he was "convicted and incarcerated without substantial proof" such that his conviction violates the Eighth Amendment's ban on cruel and unusual punishment. R. 1 at 6. But this claim is simply a re-characterization of Coronado's first, actual innocence claim and is equally non-cognizable. *See Herrara*, 506 U.S. at 416 (rejecting as non-cognizable a capital petitioner's freestanding Eighth-Amendment-based claim of actual innocence). And even if it were cognizable, Coronado's Eighth Amendment

8

claim would be procedurally defaulted because it was never raised in state court. *See Lewis*, 390 F.3d at 1026.[3]

## II. Excusing Procedural Default

Assuming any of Coronado's claims is cognizable—and the Court already has found they likely are not—the question becomes whether Coronado's procedural default of those claims should be excused. "A federal court may excuse a procedural default if a petitioner can show either [1] cause for the default and actual prejudice as a result of the alleged violation of federal law, or [2] can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Smith*, 598 F.3d at 382.

Coronado does not argue the first exception, nor could he meet that exception. The "cause and prejudice" exception requires the petitioner to establish "actual and substantial disadvantage" that infected his entire trial with "error of constitutional dimensions." *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012). "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). Coronado has not provided the Court with any "external impediment" excusing his procedural default.

Coronado instead invokes the second exception, maintaining that his actual innocence means that denial of relief would result in a miscarriage of justice.

---

[3] The same would be true if this Court were instead to interpret Coronado's third claim as a sufficiency of the evidence argument. Although Coronado raised sufficiency of the evidence in his *pro se* post-conviction petition, he did not raise it in a full round of state court review. Any such claim is therefore procedurally defaulted. *See Lewis*, 390 F.3d at 1026.

9

Coronado's theory of actual innocence is that "he [wa]s incapable of performing th[e] specific physical acts which use the bending of the wrist" shown in the surveillance video from the robbery in November 2009 because of "evidence of his disability" in the form of records from a November 1995 wrist surgery. R. 42 at 5-6.

The actual innocence gateway to excusing procedural default "is demanding and permits review only in the 'extraordinary' case." *Blackmon v. Williams*, 823 F.3d 1088, 1100-01 (7th Cir. 2016). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner also must "persuade the district court that it is 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup*, 513 U.S. at 327). "This inquiry considers 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial,'" and makes "a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Coronado's evidence does not meet this standard. That evidence consists of a series of still photographs taken from the surveillance video of the robbery showing a man placing weight on his right wrist to hoist himself over a counter (R. 42-3), and a three-page "Report of Operation" describing Coronado's right wrist surgery on

November 1, 1995 (R. 42-2). For starters, because the surveillance video was played at Coronado's trial, it is a stretch to call the still photographs taken from that video "new evidence." *Jones*, 842 F.3d at 461 ("New evidence . . . means evidence that was not presented at trial.").

And although the three-page operation report was not presented at Coronado's trial and is therefore new, it falls far short of showing Coronado's actual innocence, including when considered in conjunction with the still photographs. The operation report shows that Coronado had an "arthrodesis [*i.e.*, bone fusion] of the right wrist" surgery on November 1, 1995 (R. 42-2 at 3)—fourteen years before the November 2009 armed robbery for which he was convicted. The report reflects that Coronado received two "second opinions" from doctors who "both concur[red] that [Coronado] ha[d] avascular neurosis and that he need[ed] arthrodesis." *Id.* The surgery involved attaching a "pre-bent titanium synthes plate" "to the radius, to the carpal bone and to the metacarpal bone" to improve Coronado's wrist function. *Id.* at 4.

The operation report states that *before* surgery, Coronado had "almost no flexion or extension of the wrist," was experiencing "marked pain and discomfort," and was "unable to really use [his wrist]." *Id.* at 3. But with respect to Coronado's condition *after* surgery, the report notes only that the surgery "gave what was felt to be a solid seating of bone tissue and the plate held the bone in a very good position," and that Coronado was "transferred to the Recovery Room in satisfactory condition" *Id.* at 4.

The operation report thus does not directly address Coronado's wrist mobility and functionality post-surgery (let alone fourteen years post-surgery when the robbery at issue took place). Coronado's assertions that the surgery "was unsuccessful" and that "his ability to bend or flex his wrist is further impeded by the bone graft" (R. 42 at 5) are based on his own say-so rather than Coronado's new evidence in the form of the report. If anything, the report undermines Coronado's assertions by characterizing the surgery as a success. *See* R. 42-2 at 4. The report therefore does not tend to show that Coronado was "incapable of performing" the acts depicted in the surveillance video still shots of "using his right wrist to hoist his body over the counter and pivot left" (R. 42 at 6) fourteen years after his surgery.[4]

Considering "all the evidence, old and new, incriminating and exculpatory," Coronado fails to establish that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *See Jones*, 842 F.3d at 461. As set forth above, the evidence at trial supporting Coronado's conviction included Nunez's testimony that he loaned his van to two men, one of whom he knew as Andres (Coronado's first name). Nunez testified that the insurance papers for his van were missing when it was returned, and police officers recovered an envelope with those insurance papers at the scene of the robbery. Cones testified that fingerprints on that envelope and a fingerprint lifted from the store counter were

---

[4] Further undermining the credibility of Coronado's claim of his wrist condition following surgery are the following facts from his sentencing: (1) Coronado worked as a machine operator from 1992 through 2001 (R. 43-1 at 36); (2) Coronado committed a string of felony robbery offenses in 2003 that included grabbing and pushing the owner of a beauty salon he robbed (*id.* at 14, 16-29); and (3) at sentencing, counsel attributed Coronado's offense to substance abuse (*id.* at 36).

12

Coronado's. In light of this strong evidence of guilt, Coronado cannot show that it is more likely than not that no reasonable juror would have convicted him if they learned about his surgery records from fourteen years earlier, which do not speak directly to his wrist condition post-surgery. Coronado therefore has not met his burden to excuse his procedural defaults.

Moreover, even if Coronado could show that this is the "extraordinary case" to which the fundamental miscarriage of justice exception applies, his supplemental memorandum argues only actual innocence. *See* R. 42. It does not argue the merits of any cognizable, independent constitutional claim. As the Court has already explained, the Supreme Court has never found a freestanding actual innocence claim cognizable.[5]

## III. Certificate of Appealability

Finally, the Court declines to issue a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(2). "Habeas Corpus Rule 11(a) requires district judges to decide whether to grant or deny a COA in the first instance." *Gonzalez v. Thaler*, 565 U.S. 134, 144 n.5 (2012). To obtain a COA, a habeas petitioner must

---

[5] Even if a freestanding, substantive actual innocence claim were cognizable, the standard for such a claim would be higher than the standard for prevailing on a gateway actual innocence claim to satisfy the procedural default exception. *See Jones*, 842 F.3d at 462 (a "substantive actual-innocence claim" would require "the petitioner's new evidence" to "be strong enough to convince the court that his sentence is constitutionally intolerable even if his conviction was the product of a fair trial," whereas for a "gateway" actual innocence claim, "petitioner's new evidence need only establish sufficient doubt about his guilt to justify a conclusion that his sentence is a miscarriage of justice unless his conviction was the product of a fair trial"). Thus, for the same reasons Coronado cannot satisfy the procedural default exception, he clearly could not satisfy the standard for a freestanding, substantive actual innocence claim.

make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Court's denial of Coronado's claims rests on well-established precedent. Accordingly, the Court declines to certify any of Coronado's claims for appellate review.

## CONCLUSION

For the foregoing reasons, the Court denies Coronado's petition for a writ of habeas corpus (R. 1). The Court also declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED:

Dated: June 15, 2018

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge